```
                         UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF FLORIDA

                         CASE NO. 09-60566-Civ-COHN
                         MAGISTRATE JUDGE P.A. WHITE

MORRIS MILLER,              :

     Petitioner,            :

v.                          :      REPORT OF
                                   MAGISTRATE JUDGE
WALTER McNEIL,              :

     Respondent.            :
_____
```

## I. Introduction

Morris Miller, a state prisoner confined at South Bay Correctional Institution at South Bay, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking his conviction entered in Case No. 05-02087 in the Circuit Court of the Fifteenth Judicial Circuit of Florida at Broward County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition, the Court has the petitioner's response to an order regarding the limitations period, and the respondent's response to an order to show cause with multiple exhibits.

## II. Claims

Miller raises the following grounds for relief:

1.  He received ineffective assistance of trial counsel, because his lawyer prevented him from accepting the state's initial plea offer.

2.  He received ineffective assistance of trial counsel, because his lawyer during closing argument conceded his guilt to the offense of delivery of cocaine without his consent.

### III. Procedural History

Miller was convicted after jury trial of the offense of delivery of cocaine and he was sentenced as an habitual felony offender to a term of imprisonment of twelve years. (DE# 11; Ex. 1, 3, 4, 5). Miller's conviction and sentence were affirmed on direct appeal by the Florida Fourth District Court of Appeal in a *per curiam* decision without written opinion. (DE# 11; Ex. 9, 10). See also Miller v. State, 944 So.2d 1001 (Fla. 4 DCA 2006)(table). Miller next pursued postconviction relief, challenging his conviction and sentence in a pro se motion filed in the trial court pursuant to Fla.R.Crim.P. 3.850. (DE# 11; Ex. 11). Miller raised the identical two claims of ineffective assistance of trial counsel presented in this federal petition as well as an additional unrelated ground for relief. Id. The state filed a response to the motion with supporting exhibits, asserting that Miller was not entitled to postconviction relief in that the ineffective assistance of trial counsel claims were meritless as refuted by the record. (DE# 11; Ex. 13). The trial court entered a written order summarily denying the Rule 3.850 motion for the reasons expressed by the state in its response which was attached to the order and incorporated therein. (DE# 11; Ex. 14).

The Fourth District Court of Appeal issued a written opinion affirming the summary denial of postconviction relief. (DE# 11; Ex. 17). See also Miller v. State, 980 So.2d 546 (Fla. 4 DCA 2008). However, as to Miller's claim of ineffective assistance of trial

2

counsel for advising him to reject a plea offer and to take his case to trial instead, the court certified conflict with decisions issued by other state appellate courts. Id., *citing*, Gomez v. State, 832 So.2d 793 (Fla. 3 DCA 2002)(holding that post-conviction movant was entitled to evidentiary hearing on his motion alleging ineffective assistance of his trial counsel in advising him to reject original plea bargain, where present record did not conclusively refute such claim) and Sharpe v. State, 861 So.2d 483 (Fla. 3 DCA 2003)(same). After his motion for rehearing was denied, Miller sought discretionary review before the Florida Supreme Court. (DE# 11; Ex. 18, 19, 21). The state filed a response to an order to show cause, arguing that based upon the record in this case, Miller was not entitled to an evidentiary hearing on the subject claim in that his claim was legally insufficient. (DE# 11; Ex. 23). The Florida Supreme Court determined that it should decline jurisdiction and, accordingly, the court denied Miller's petition for discretionary review. (DE# 11; Ex. 24). See also Miller v. State, 6 So.3d 607, 2009 WL 624069 (Fla. 2009). Soon after all state court proceedings had concluded, Miller filed the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

IV. Threshold Issues - Timeliness, Exhaustion and Procedural Bar

The respondent correctly concedes that this petition has been timely filed. See 28 U.S.C. §2244(d)(1)-(2). The respondent further concedes that the claims raised in the instant federal petition have been properly exhausted before the state courts and are not subject to any procedural bars. See 28 U.S.C. §2254(b)(1) and (b)(1)(A).[1] See also Cone v. Bell, ___ U.S. ___, 129 S.Ct. 1769,

---

[1] An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999);

173 L.Ed.2d 701 (2009).

## V. Standard of Review

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in Williams v. Taylor, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may

---

Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979).

>        grant the writ if the state court arrives at a conclusion
>        opposite to that reached by this Court on a question of law or
>        if the state court decides a case differently than this Court
>        has on a set of materially indistinguishable facts. Under the
>        "unreasonable application" clause, a federal habeas court may
>        grant the writ if the state court identifies the correct
>        governing legal principle from this Court's decisions but
>        unreasonably applies that principle to the facts of the
>        prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id*. at 409-11. See also Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412, 120 S.Ct. at 1523 (majority opinion by O'Connor, J.). Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. See Wright v. Sec. of Dep't of Corr., 278 F.3d 1245, 1255 (11 Cir. 2002). Moreover, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d 840, 844 (11 Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2053 (2008).

## VI. Discussion

Miller raises two grounds of ineffective assistance of trial

counsel. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668 (1984). A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), *citing*, Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." Knowles, 129 S.Ct. at 1420. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

### A. Ineffective Assistance Regarding Plea Offer

Miller claims in ground one that trial counsel prevented him from accepting the state's initial plea offer of forty-two months' imprisonment. Specifically, Miller alleges that counsel was ineffective in advising him to reject the plea bargain based on counsel's belief that Miller could win at trial. Miller maintains that he did not agree with counsel and merely acquiesced to counsel's decision and, if he had been permitted to make his own decision, he would have instead accepted the offer and not have proceeded to trial. The crux of Miller's case is that with effective assistance he would have received a more favorable sentence pursuant to plea negotiations. Miller's claim is meritless and wholly refuted from the record in this case.

While there is no constitutional right to a plea bargain;

Weatherford v. Bursey, 429 U.S. 545, 561 (1977); Nunes v. Mueller, 350 F.3d 1045, 1052 (9 Cir. 2003), cert. denied, 543 U.S. 1038 (2004), "the Sixth Amendment right to effective assistance of counsel extends to assistance rendered when deciding whether to reject a plea offer." Almonacid v. United States, 476 F.3d 518, 521 (7 Cir. 2007)(*citing* Toro v. Fairman, 940 F.2d 1065, 1067 (7 Cir. 1991)). See also Coulter v. Herring, 60 F.3d 1499, 1504 (11 Cir. 1995)(addressing petitioner's claim that counsel failed to advise him of the possible sentence he might face if he did not accept a plea offer and proceeded to trial, and holding that a petitioner "'must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded guilty and would [not] have insisted on going to trial.'")(alteration in original) (*quoting* Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)); Smith v. United States, 348 F.3d 545, 552 (6 Cir. 2003); Purdy v. United States, 208 F.3d 41 (2 Cir. 2000).

"As part of this advice, counsel must communicate to the defendant the terms of the plea offer, ... and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed...." Purdy, 208 F.3d at 45 (citations omitted). Thus, once the state elects to extend a plea offer to a defendant, defense counsel must not only communicate the offer, but must also competently advise defendant regarding whether to accept. See Nunes, 350 F.3d at 1052-53. Counsel's determination "as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because '[r]epresentation is an art,' ... and '[t]here are countless ways to provide effective assistance in any given case, ...'". Purdy, 208 F.3d at 45. (*quoting* Strickland, 466 U.S. at 689, 693).

7

Even if counsel's advice to reject a plea could be found objectively unreasonable in a particular case, to establish prejudice, the petitioner must "establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement." Diaz v. United States, 930 F.2d 832, 835 (11 Cir. 1991). The Eleventh Circuit in *Diaz* held that the petitioner failed to establish he was prejudiced by counsel's alleged advice to reject the plea offer. Id. The Court noted in its opinion:

> [The petitioner] does not allege that but for his attorney's errors, he would have accepted the plea offer; he cites no evidence to indicate that prior to his conviction he expressed any desire to plead guilty. *He argues only that he would have received a lesser sentence had he accepted the plea agreement*. However, the Supreme Court has recognized that "[j]udicial scrutiny of counsel's performance must be highly deferential," and that courts should ensure that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

(emphasis added). Id. (citation omitted). The Court, therefore, concluded that because the petitioner had been aware of the plea offer, "his after the fact testimony concerning his desire to plead, without more, [was] insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." Id. (*citing* Johnson v. Duckworth, 793 F.2d 898, 902 n. 3 (7 Cir. 1986)).

In the instant case, as revealed by Miller's own pleadings, he was aware of the initial plea offer.[2] Miller has not cited any

---

[2]It is noted that there is no evidence in the record that any such plea offer of 42 months had been offered by the state. Only the later plea offer of 62 months is supported by the record. See Trial Transcript at 3. (DE# 11; Ex. 3). However, for purposes of this habeas corpus proceeding, this Court will accept as true that such an offer was made by the state before trial.

8

record evidence to demonstrate that before his conviction he expressed any desire to accept the plea offer and plead guilty. And, in fact, the record supports the contrary, instead, demonstrating Miller's unequivocal decision to reject any and all plea offers and be tried before a jury. Immediately before trial proceedings were to commence, the following exchange occurred between the court, Miller and trial counsel Early:

> THE COURT: ...Is there anything we need to discuss prior to commencing trial?
>
> MR. EARLY: Judge, just purposes of 3.850, the state made an offer, 62 months Florida state prison being habitual offender qualified.
>
> Mr. Miller, I have made the offer to you, correct?
>
> THE DEFENDANT: Yes.
>
> MR. EARLY: And you don't want that offer, right?
>
> THE DEFENDANT: No, sir.
>
> MR. EARLY: I have explained to you that you are charged with a second degree felony, and if the state habitual offender qualifies you, you have potential max penalty of 30 years Florida state prison.
>
> THE DEFENDANT: Yes.
>
> MR. EARLY: And knowing all that, you still want to go forward with trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Now, Mr. Miller one thing that I'm sure Mr. Early spoke to you about but I want to make certain, I have absolutely no idea what I would sentence you to if you were to be found guilty, but what you need to understand is if you are sentenced as a habitual offender, not only does the possible punishment increase or double, so it goes from 15 years up to 30 years in Florida state prison, but as a habitual offender, you don't receive the gain time and other credits that

|  |  |
|---|---|
|  | you might towards your release if you were sentenced not as a habitual offender. |
|  | You might have to serve literally day for day. So whatever sentence you would be sentenced to, you would serve that sentence and not be eligible for release early. Do you understand that? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And have you had time to speak to Mr. Early or anyone else about this? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And is it your desire - - and you have an absolute right to go forward and to go trial - - but is it your desire to reject the state's offer and go to trial? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Any questions at all? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | All right. Let us bring in the jury. |

(Trial Transcript at 3-5)(DE# 11; Ex. 3).

While it is true the above-quoted portion of the record pertains to an apparent later plea offer involving a lengthier sentence of 62 months' imprisonment, the colloquy is clearly indicative of Miller's desire to proceed to trial, rather than enter a plea of guilty. It is important to note that Miller had no questions for the court or counsel and at no time whatever mentioned any earlier plea offer of 42 months and that he would have accepted any such offer. Miller merely states now in this habeas corpus proceeding that, while he did not agree with trial counsel's decision to reject the initial plea offer of 42 months, he "went along with defense counsel's decision because Petitioner felt that counsel knew better than he about the outcome of the

criminal prosecution pending against him." See Petition at 5A. (DE# 1). Petitioner's mere after the fact assertion that he desired to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer.[3] See Diaz, 930 F.2d at 835. It is apparent that his claim is the product of hindsight in that Miller allegedly would have received a lesser sentence if he had accepted the plea offer rather than proceed to trial before a jury where he was found guilty and sentenced to a term of twelve years.

Moreover, Miller has made no showing that the defense advanced by his counsel at trial was in any way ineffective or improper. The defense at trial was essentially that the state had failed to prove beyond a reasonable doubt that it was Miller who had sold the cocaine to the undercover police officer, Detective Florenco.[4] See

---

[3] A habeas petitioner's self-serving testimony after the fact, which in this case is that he would not have gone to trial if he had known one or another fact, is in and of itself insufficient. See generally Siao-Pao v. Keane, 878 F.Supp. 468, 472 (S.D.N.Y. 1995); Panuccio v. Kelly, 927 F.2d 106, 109 (2 Cir. 1991)(a defendant's testimony after the fact suffers from obvious credibility problems). Moreover, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982).

[4] The following statements made to the jury immediately before the end of closing argument, after defense counsel had discussed all the evidence presented and argued that the state had not proved the crime charged beyond a reasonable doubt, aptly summarizes the defense presented at trial:

> So then we have, it goes back to [Detective] Florenco. How convenient. How very, very convenient. The state says, well, never mind the fact that [Detective], Cruz really didn't hear anything, that he just went. Never mind the fact that [Task Force Officer] Sousa wasn't there. Let's focus on Officer Florenco. Says if you believe him, then you should believe everything. So strip down to the very basics. It's one person versus one person.
>
> I agree with the state. It's very simple. It's not confusing. He said listen to the tape and I agree, listen to the tape.
>
> There's two people involved. On the tape [Detective Florenco] says he's approached by a guy wearing black. [Prosecutor] Mr. Kader yesterday twice says, yeah, it's a guy wearing black. He showed a picture of a guy wearing blue. So what happens when I stand up? Oh, yeah, it's the guy wearing blue.

e.g., Trial Transcript at 118, 138-40, 157-58, 163-64, 180-84, 195-97. Through skillful cross-examination and argument before the jury, the defense attempted to show that another individual, who had also approached the detective during the time that Miller had, was the true seller of the cocaine and Miller had been misidentified as the seller. Id.

Keeping with the defense presented that Miller was not the seller of the narcotics, trial counsel informed the court during the charge conference that the lesser included offense of simple possession of cocaine was not being requested and that the jury was to either find Miller guilty of the crime charged, delivery of cocaine, or not guilty. Id. at 142-43. The charge conference took place immediately after Detective Florenco, the state's key witness, had testified and had unequivocally identified Miller as the seller of cocaine. Id. at 120-37, 142-44. While trial counsel advised the court that he had discussed the issue of lesser included offenses with Miller, the court personally addressed Miller to determine whether he was in fact in agreement with waiving any applicable lesser included offense. The trial court informed Miller that he had the right to request the applicable lesser included offense or, instead, proceed with the all-or-nothing defense, as indicated by counsel. Id. at 143-44. The court asked Miller if he understood and whether he had any questions. Id. Miller responded in the affirmative to the first question and in

---

> The state wants you to forget all that. The problem is it's not good enough. The problem is they [sic] are doubts, and they are reasonable doubts.
>
> I told you yesterday and I'm doing it right now, I'm asking you to consider the reasonable doubts, the lack of the evidence that we discussed in jury selection. I'm asking you to return the only verdict that the evidence has shown, the verdict that justice demands, that's to find Morris [Miller] not guilty. Thanks for your time.

(Trial Transcript at 196-97)(DE# 11; Ex. 3).

12

the negative to the second. Id. After Miller assured the court that no promises had been made and that he was in accord with the defense presented, the court found Miller's decision to waive the lesser included offense to have been freely, voluntarily and knowingly made. Id. at 144. The court again asked Miller the following day, after all state witnesses had testified and all evidence presented, if it was still his decision not to have any lesser included offenses submitted to the jury, and Miller answered, "Yes, sir." Id. at 176. To make certain that the decision had in fact been knowingly and voluntarily made, the court further questioned Miller about his decision and Miller stated that he had no questions of either the court or trial counsel and he stood by the decision made the previous day. Id. at 176-77. Thus, Miller maintained his innocence of the crime charged throughout the proceeding.

Full review of the record reveals that the defense theory presented was certainly a viable one. Miller cannot show that counsel gave him erroneous advice or, in other words, that no competent attorney would have advised him the theory was viable and to proceed to trial with such a theory. See Case v. McNeil, 2009 WL 6372549, *5-7 (N.D.Fla. 2009). Consequently, Miller was not prejudiced by counsel's advice that Miller should reject the state's plea offer and proceed to trial. Miller has failed to establish that he would have otherwise pleaded guilty, and his assertions here to that effect are not credible. See Diaz, 930 F.2d at 835 ("[A]fter the fact testimony concerning [the] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, [the defendant] would have accepted the plea offer."). Further, the record indicates that Miller clearly and unequivocally agreed with trial counsel's advice to proceed to trial and it cannot be said that, even if he merely

acquiesced, such acquiescence was anything but voluntary here. See generally Lambrix v. Singletary, 72 F.3d 1500, 1508 (11 Cir. 1996)("Without evidence that [the defendant] was subject to continued coercion, we cannot assume that [the defendant's] apparent acquiescence to a trial strategy in which he did not testify was anything but voluntary."), aff'd, 520 U.S. 518 (1997). The fact that the defense at trial was ultimately unsuccessful does not indicate that counsel's performance was constitutionally ineffective.

In sum, the state court record demonstrates that Petitioner at all times desired to reject the state's plea offer[s] and wanted and was willing to risk greater punishment for the possibility of a full acquittal. Petitioner repeatedly stated his intent to take the case to trial. As indicated above, Miller rejected a plea offer of approximately five years. It is more important to note that Miller's defense at trial was that he had not been the seller of the cocaine and that he was innocent with regard to the crime charged as well as any applicable lesser included offenses. In this federal proceeding, as is evident from claim two of the instant petition, Miller continues to claim that he is innocent of the crime for which he was convicted. His postconviction assertion that he would have entered a plea of guilty is not believable.

Accordingly, the record does not demonstrate that Miller rejected a favorable plea offer based on the alleged bad legal advice from counsel. Miller has, therefore, not shown that he received constitutionally ineffective assistance of counsel, as alleged in ground one. See Strickland v. Washington, supra. Thus, in light of Petitioner's continued protestations of innocence and statements indicating his intent to take the case to trial, and the absence of any objective evidence indicating that before trial he

expressed any desire to plead to the delivery of cocaine charge in exchange for a 42-month sentence, the state trial court's determination that Petitioner failed to show prejudice resulting from counsel's alleged misadvice, which was affirmed by the state appellate court, was not contrary to nor an unreasonable application of *Strickland*. Petitioner is not entitled to federal habeas relief on this claim pursuant to §2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). See also Aquilar v. Secretary, Dept. of Corrections, 2008 WL 5142411, *7-8 (M.D.Fla. 2008); Jones v. Secretary, Dept. of Corrections, 319 Fed.Appx. 792, 795 (11 Cir. 2009).

B. Ineffective Assistance of Counsel Regarding Concession of Guilt

Miller claims in ground two that his lawyer improperly conceded his guilt during closing argument. Miller relies upon the following statement made by trial counsel at the start of his rebuttal closing argument: "I agree with the state. Sounds kind of funny, doesn't it? We do agree?" (Trial Transcript at 195)(DE# 11; Ex. 3). This claim is meritless.

Review of the trial court proceedings demonstrates that defense counsel presented the best possible defense under the circumstances of this case. The challenged remark has been completely taken out of context and in no way constituted an improper concession of guilt. Trial counsel, during closing argument, was merely agreeing with the comment by the state that the different law enforcement officers had different limited roles in the sting operation and, thereby, limited knowledge of the transaction. It is apparent from review of the trial transcript as a whole that trial counsel forcefully presented the defense that Miller had not been the seller of the subject cocaine and he was not guilty of delivering cocaine or guilty of any other offense.

Trial counsel clearly challenged the testimony of the key police officer, Detective Florenco, as not reliable and also pointed out to the jury that the other subject officers, who had more limited roles in the narcotics transaction, had not been in the position to see or hear the actual seller, rendering their testimony not meaningful in this case. Id. at 180-82, 195-97. Trial counsel additionally argued that the only physical evidence relied upon by the state was a photocopied sheet of paper depicting dollar bills.[5] Id. at 182-84. Trial counsel never conceded Miller's guilt to the jury.

Contrary to Miller's apparent assertion, the result of the trial was not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). Defense counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing.[17] United States v. Cronic, 466 U.S. 648, 659 (1984). As was the prerogative of the jury, it rejected the defense presented, and instead believed the strong evidence admitted by the state, which included testimony of the various police officers, an audio recording of the narcotics transaction, a photograph of

---

[5]Evidence admitted at trial indicates that the money used in the narcotics transaction, two $20.00 bills, had been photocopied before the transaction had taken place. See Trial Transcript at 130. When Miller was arrested by Detective Cruz, he dropped money to the ground. Id. 130-31, 139-40, 161-62. The money was recovered and Detective Florenco confirmed that the money dropped by Miller had been used to purchase the cocaine. Id.

[17]It appears that Miller is raising a claim pursuant to United States v. Cronic, 466 U.S. 648 (1984). In some cases, counsel's failure or inability to subject the prosecution's case to meaningful adversarial testing violates the Sixth Amendment and makes the adversarial process presumptively unreliable. Id. at 659. When such a violation occurs, so as to render the trial presumptively unreasonable, no specific showing of prejudice is required. Id. The Eleventh Circuit applies the Cronic dicta only in a "narrow range of cases" where there is a "fundamental breakdown of the adversarial process," Chadwick v. Green, 740 F.2d 897, 900-01 (11 Cir. 1984), and concentrates instead on whether or not the accused was denied a fair trial. Hammonds v. Newsome, 816 F.2d 611, 613 (11 Cir. 1987). In this case, Miller was in no way denied a fair trial. As indicated herein, the record demonstrates that counsel subjected the state's case to a meaningful challenge.

16

Miller taken shortly after his arrest from which Detective Florenco identified Miller as the seller, and photocopies of money used in the transaction where the serial numbers of the bills had been earlier recorded. This Court must defer to the jury's judgment as to the weight and credibility of the evidence. See <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11 Cir. 1987), <u>citing</u>, <u>Jackson v. Virginia</u>, 443 U.S. 307, 326 (1979). The trial court's determination that Miller was not entitled to postconviction relief on his second claim of ineffective assistance of counsel, which decision was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

## VII. <u>Conclusion</u>

It is therefore recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 7th day of May, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Morris Miller, <u>Pro Se</u>
      DC# 070672
      South Bay Correctional Facility
      600 U.S. Highway 27 South
      South Bay, FL 33493

```
Melanie Dale Surber, AAG
Office of the Attorney General
1515 North Flagler Drive, #900
West Palm Beach, FL 33401-3428
```